```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION

George Collins,                 :

        Plaintiff,              :

    v.                          :    Case No. 2:11-CV-708

City of Columbus, et al.,       :    Magistrate Judge Kemp

        Defendants.             :
```

OPINION AND ORDER

This matter is before the Court, with consent of the parties pursuant to 28 U.S.C. §636(c), for consideration of the Defendants' Motion for Summary Judgment, Doc. No. 12. In that motion, the defendants assert that Mr. Collins' claim made under 42 U.S.C. §1983 is barred by the applicable two-year statute of limitations. For the reasons that follow, the motion will be denied.

I.

Plaintiff George Collins filed this action pursuant to 42 U.S.C. §1983 against the City of Columbus, Ohio, Police Chief Walter Distelzweig, and Detective Craig Bowen. Mr. Collins claims that when the City sold some property that had been taken from him pursuant to a search warrant, he was deprived of due process of law in violation of the Fourteenth Amendment to the United States Constitution. Mr. Collins also asserts claims under Ohio law for unlawful conversion, abuse of process and intentional infliction of emotional distress.

The following facts, all of which are relevant to the statute of limitations issue, appear to be undisputed. They are taken largely from the exhibits filed by the parties in connection with the summary judgment motion.

On September 17, 2007, Defendant Bowen, a Burglary Detective with the Columbus Division of Police, executed a search warrant on certain storage units owned by Mr. Collins as part of an investigation involving the theft of landscape equipment. At the time of the investigation, Mr. Collins owned his own lawn care business. Detective Bowen seized seventeen mowers and small vehicles and twenty-two items of landscape equipment from the storage units. The next day, he delivered the mowers and small vehicles to the Columbus Police Impound Lot and he delivered the landscape equipment to the Columbus Police Property Room.

Apparently, some of this equipment had been reported stolen. Between September 19 and 28, 2007, fourteen of the mowers and small vehicles and nineteen items of landscape equipment were returned to their owners. Those items are not at issue here.

On December 11, 2007, a Franklin County grand jury indicted Mr. Collins on nine counts of receiving stolen property. On September 15, 2008, Mr. Collins pleaded guilty to certain of these charges. At that time, the City still had possession of some of these items of equipment that had been taken pursuant to the search warrant but not claimed by anyone (except, of course, Mr. Collins).

Attorney Dennis Pusateri represented Mr. Collins in connection with the state court criminal proceedings. Mr. Pusateri claims to have had discussions with Assistant Prosecutor Jeff Blake regarding returning the remaining seized items to Mr. Collins. According to Mr. Pusateri, Mr. Blake said that no property could be returned unless a court order were obtained.

Mr. Pusateri made an oral motion at Mr. Collins' sentencing hearing for the return of these items which Mr. Collins owned. That oral motion was not granted. Mr. Pusateri then filed a written motion on December 8, 2008. When that motion was not ruled on, Mr. Pusateri made a request for ruling on the motion on

June 24, 2009.  During this same time frame, Mr. Collins was given a three-year sentence on the charges to which he pleaded guilty.

All the while, and apparently without having given notice to either Mr. Collins or Mr. Pusateri, Detective Bowen directed that the remaining three mowers and small vehicles be disposed of by the Columbus Police Impound Lot.  They were sold at auction in March and May, 2008.  The three landscape items were sold at a public auction on June 27, 2009, pursuant to a May 15, 2009 Order by the Franklin County Municipal Court authorizing such sale.

Still having had no ruling on the motions he filed, in early summer, 2010, Mr. Pusateri contacted Mr. Blake regarding the return of Mr. Collins' landscape items.  Mr. Blake told Mr. Pusateri that he should contact the Columbus City Attorney's office regarding the return of property.  He did so and on August 4, 2010, was told by Assistant City Attorney Jeffrey Furbee that the Columbus Police Department "no longer has any of this property."

Mr. Collins filed this case on August 5, 2011.  In their Motion for Summary Judgment, Defendants argue that Mr. Collins' §1983 claim is barred by the two-year statute of limitations found in Ohio Rev. Code §2305.10 because his cause of action accrued either when the property was seized, on September 17, 2007, or when the last items were sold at auction, on June 27, 2009.  Mr. Collins, on the other hand, argues that his federal cause of action accrued no earlier than August 4, 2010, when Mr. Pusateri first learned that the property was no longer in the possession of the Columbus Police Department.  In the alternative, Mr. Collins argues that contested issues of fact preclude summary judgment on the statute of limitations issue.

II.

Summary judgment is not a substitute for a trial when facts

material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby,Inc., 477 U.S. 242 (1986). Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion. It is with these standards in mind that the instant motion must be decided.

### III.
#### A. The Date of Accrual of the Claim

The parties agree that Mr. Collins' §1983 claim is subject to Ohio's two year statute of limitations for claims of bodily

injury, R.C. § 2305.10.  See, e.g., LRL Properties v. Portage Metro Housing Authority, 55 F.3d 1097 (6th Cir. 1995).  Although state law governs the limitations period for actions filed pursuant to §1983, federal law governs when the limitations period begins to run.  Wallace v. Kato, 549 U.S. 384, 388 (2007).  The limitations period begins to run when the cause of action accrues; that is, when the Plaintiff "knows or has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence."  Roberson v. Tennessee, 399 F.2d 792, 794 (6th Cir. 2005), quoting Sevier v. Turner, 742 F.2d 262, 273 (6th Cir. 1984).  In determining when a plaintiff knows or has reason to know of the injury, courts use a "common-sense" approach, considering "what event should have alerted the typical lay person to protect his or her rights."  Id., quoting Hughes v. Vanderbilt Univ., 215 F.3d 543, 548 (6th Cir. 2000).  This is known as the "discovery rule."  Id.

Everyone apparently agrees that Mr. Collins was aware of the initial seizure of his property on September 17, 2007.  According to the Defendants, a reasonable person would have known at that time that the City might dispose of any property which belonged to Mr. Collins rather than return it to him.  Thus, Defendants argue that the statute of limitations began to run on September 17, 2007.  In contrast, Mr. Collins argues that, since his claims are based upon "the unlawful disposition, not the initial seizure[ ] of his property . . . the event that should have alerted him to protect his rights was when [Mr.] Pusateri first was notified that Defendants had disposed of his property on August 4, 2010."  See Plaintiff's Memorandum in Opposition, Doc. No. 14, at 5.

There is some appeal to Mr. Collins' argument.  He apparently does not take issue with the legality of the seizure of either the stolen property or his own property, and that

seizure was authorized by a search warrant.  He may have believed, reasonably, that once the City sorted out the issue of who owned each item of property, and after his criminal case was disposed of, the City would not either keep his property or sell it to others.  And from the facts recited above, he was apparently led to believe that the City did not intend permanently to deprive him of his property, but would, upon the issuance of the correct court order, give it back.  Of course, that is not what happened, and he did file suit within two years after finding out about the City's actions.     Nevertheless, the case law may not appear to support Mr. Collins' argument on this point.  Rather, the cases suggest that it is not the ultimate disposition of a person's property which should have alerted the person of the invasion of that person's property rights, but the initial seizure of the property - which, in this case, happened well more than two years before Mr. Collins filed suit.  As the Court of Appeals for the Third Circuit explained, "the discovery rule hinges upon actual, as opposed to legal, injury," Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1392 n.9 (3rd Cir. 1994), and it can plausibly be argued that what Mr. Collins found out belatedly was that he had been legally injured, while he knew all along that the City had seized his property and had not returned it.

     This case strongly resembles Stanley v. Malone, 2009 WL 485491 (S.D. Ohio February 26, 2009) (Holschuh, J.).  There, Plaintiffs asserted §1983 claims based upon the alleged illegal seizure and retention of property.  In that case, a warrant had been issued allowing police officers to seize two items (a 1967 Pontiac LeMans and a tailgate for a pickup truck).  Those items were not found, but the officers seized a number of other items for which they had no warrant, and delayed returning the items, during which time they were damaged.  The property was eventually

returned after a state court decided that none of it was contraband.  The lawsuit was filed within two years of the date of the court order, but more than two years after the initial seizure.

Judge Holschuh dismissed the case on statute of limitations grounds.  In doing so, he concluded that the Stanley plaintiffs' actual injury occurred on the date of the allegedly illegal search and seizure – not on the date that the state court suppressed evidence of the search.  Id., 2009 WL 485491 at *5. See also Filer v. Polston, 2012 WL 1694588 (S.D. Ohio May 15, 2012) (Newman, M.J.)(holding that a cause of action for an illegal search and seizure accrues on the date of the search, and not on a later date when a state court grants a motion to suppress on grounds that the search was illegal).

One might argue that there are subtle differences in these cases which justify reaching a different result here.  However, if, in fact, the seizure of Mr. Collins' own equipment was not authorized by the warrant, this case is just like Stanley, and Mr. Collins would have known (or could reasonably have learned) that he had been deprived of his own property in violation of the search warrant the day the search occurred.  On the other hand, if the warrant actually authorized the seizure of Mr. Collins' own equipment, there is a good chance that the warrant was not supported by probable cause, and that would make this case exactly like Filer v. Polston.  There is, of course, the third possibility, which is that the warrant actually but mistakenly described Mr. Collins' own property as having been stolen, or being evidence of a crime, and that it did so based on a proper showing of probable cause; after all, not every probable cause affidavit turns out to be true.  The Court does not have the warrant in front of it, however, and there are not enough facts from which the Court could find that a reasonable person, faced

with this warrant and armed with what Mr. Collins knew about which pieces of equipment were his, would still be unaware that he had suffered an injury to his property on the date of the search. Based on the facts which appear from the record, it seems likely that his claim accrued on September 17, 2007, although because the Court concludes below that there are other reasons why the case may not be time-barred, the Court declines to make a definitive ruling on this issue, and invites the parties to develop the record further should the limitations issue continue to be litigated.

      B. <u>Excusing an Otherwise Untimely Filing</u>

  In many cases, deciding when a plaintiff's cause of action accrued is just the first step in deciding if the case must be dismissed on limitations grounds. There are a number of reasons which excuse a party's failure to file within the prescribed time period after accrual of that party's claim, and Mr. Collins argues that one or more of those reasons apply here. The Court agrees with him that one of them may, and that the facts concerning that issue are in dispute, but there are others which clearly do not.

  First, Mr. Collins argues that the statute of limitations really did not begin to run on the date his property was seized because the City's retention of that property was a continuing violation of his rights. The Court finds no merit in this argument.

  The Court of Appeals for the Sixth Circuit has adopted a three-part inquiry for determining whether a continuing violation exists which would excuse the otherwise untimely filing of a claim. "First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern[ ]. Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiff[ ] must have been

8

avoidable if the defendants had at any time ceased their wrongful conduct." Tolbert v. State of Ohio Dept. of Transp., 172 F.3d 934, 940 (6th Cir. 1999) (citation omitted).

The Court of Appeals has been reluctant "to apply [the continuing violation] doctrine outside of the context of Title VII." LRL Properties v. Portage Metro Housing Authority, 55 F.3d 1097, 1105 n.3 (6th Cir. 1995) (citations omitted); see also Stanley v. Malone, 2009 WL 485491 at *6 (observing that "the continuing violation doctrine typically arises in the context of employment discrimination cases and is rarely extended to § 1983 claims"). In Dixon v. Anderson, 928 F.2d 212 (6th Cir. 1991), the court explained that "'continuing violations' [ ] fall[ ] into two categories of 'narrowly limited exceptions' to the usual rule that 'statutes of limitations . . . are triggered at the time the allegedly discriminatory act occurred.'" Id. at 216, quoting E.E.O.C. v. Penton Indus. Pub. Co., 851 F.2d 835, 837-38 (6th Cir. 1988). The first category "arises where there is some evidence of present discriminatory activity giving rise to a claim of continuing violation ...." Id. For instance, each time an employer commits an illegal act such as giving unequal pay for equal work, a separate violation of law occurs. The second category of continuing violation arises when there is "'a longstanding and demonstrable policy of discrimination.'" Id. at 217. In this regard, a plaintiff "must establish that some form of intentional discrimination against the class of which plaintiff was a member was the company's standard operating procedure." Sharpe v. Cureton, 319 F.3d 259, 269 (6th Cir. 2003).

As the Tolbert court explained, a "continuing violation is occasioned by continued unlawful acts, not continual ill effects from an original violation." Tolbert, 172 F.3d at 940, quoting National Advertising Co. v. City of Raleigh, 947 F.2d 1158,, 1166

9

(4th Cir. 1991). In Herrin v. Dunham, 2008 WL 2781456, *5 (E.D. Mich. March 17, 2008), the court held that "the alleged wrongful retention of property concerns the continued ill effects of the initial [ ] seizure [so] that the continuing violation theory does not apply."

In this case, the Defendants' continued retention of Mr. Collins' property following the seizure clearly amounts to a "continued ill effect" of the initial seizure. The Court notes, however, that Mr. Collins apparently bases his theory of continuing violation not on the continued retention of his property by Defendants, but rather upon the fact that Defendants allegedly "hid" the sale of his property and were engaged in some form of "cover-up." According to Mr. Collins, "[d]espite the very limited discovery in this matter, it is clear that Defendants have been involved in a cover-up regarding the unlawful disposal of Plaintiff's property." Plaintiff's Memorandum in Opposition, Doc. No. 14, at 6.

Even if there were enough facts to support this position, the Court is not convinced that the continuing violation theory applies to toll the statute of limitations in this case. If it is true that Defendants were engaged in some form of collusion with regard to the disposal of his property, Mr. Collins still has not shown that their actions were part of an overarching policy on Defendants' part to violate his and others' rights on an ongoing basis. The concept that the defendants somehow hid their wrongful detention or disposition of Mr. Collins' property from him is better analyzed under an equitable theory such as the ones discussed below, and does not fit logically into the "continuing violation" doctrine. For these reasons, the Court concludes that the continuing violation doctrine does not apply to this case.

Next, Mr. Collins argues that because his attorney, Mr.

Pusateri, "was [led] to believe that Defendants still had possession of [Collins'] property" and because Mr. Pusateri requested return of the property from the state court, the statute of limitations is subject to equitable tolling. See Plaintiff's Memorandum in Opposition, at 7. According to Mr. Collins, "[w]ithout [Defendants'] representations, [he] would not have waited until August 5, 2011 to file this lawsuit." Id. He also argues that Defendants should not be permitted to benefit from their misconduct because they "unlawfully disposed of [Collins'] property knowing there was a pending motion before the trial court concerning the property." Id.

Equitable tolling applies "only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 561 (6th Cir. 2000) (citations omitted). The doctrine "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." E.E.O.C. v. Kentucky State Police Dept., 80 F.3d 1086, 1095 (6th Cir. 1996), quoting Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir. 1990).

In this Circuit, there are factors a court must consider when determining whether the doctrine of equitable tolling applies: "(1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." Truitt v. County of Wayne, 148 F.3d 644, 648 (6th Cir. 1998). The factors are not, however, "comprehensive, nor is each of the five factors relevant in all cases." Cook v. Stegall, 295 F.3d 517,

521 (6th Cir. 2002). Thus, the Court must consider equitable tolling on a "case-by-case basis." Id.

Looking at these factors, the Court finds that the doctrine of equitable tolling is not applicable here. Mr. Collins was clearly aware that Defendants had possession of his property. As discussed above, he may have known, as early as the date it was seized, that the seizure was improper, and he certainly knew, when his attorney first asked for it back (which happened more than two years before he filed this case), that the City had no continuing right to keep or dispose of it. There is no evidence that he was unaware of the existence of the two-year statute of limitations for §1983 claims. The fact that he may have been unaware of the actual status of his property - that is, that it had been sold - does not alter this conclusion, because he knew he did not have it and that (assuming the truth of his claim of lawful ownership) the City had no right to keep it. This is simply not a case for equitable tolling.

There is another equitable doctrine that fits these facts more closely, however, and that is the doctrine of equitable estoppel. The doctrine of "[e]quitable estoppel 'comes into play if the defendant takes active steps to prevent plaintiff from suing in time, as by promising not to plead the statute of limitations.'" E.E.O.C. v. Kentucky State Police Dept., 80 F.3d 1086, 1095 (6th Cir. 1996), quoting Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450-51 (7th Cir. 1990). In contrast, equitable tolling applies "where there lacks any allegation of impropriety on the defendant's part . . . ." Easterly v. Budd, 2006 WL 2404143, *9 (N.D. Ohio August 18, 2006).

Equitable estoppel "applies exclusively in situations where demonstrated egregious wrongdoing by a defendant prevents a plaintiff from bringing suit on a claim of which plaintiff is aware." Id. (citations omitted). The doctrine "is invoked in

12

cases where the defendant takes active steps to prevent plaintiff from suing in time, such as by hiding evidence or promising not to plead the statute of limitations." Bridgeport Music, Inc. v. Diamond Time, Ltd., 371 F.3d 883, 891 (6th Cir. 2004) (citations omitted). The doctrine is premised upon both the defendant's improper conduct as well as the plaintiff's "actual and reasonable reliance thereon." Id., quoting Hentosh v. Herman M. Finch Univ., 167 F.3d 1170, 1174 (7th Cir. 1999). In order to toll the statute of limitations on this basis, the plaintiff must show: (1) conduct or language amounting to representation of a material fact; (2) the party to be estopped is aware of the true facts; (3) the party to be estopped intends that the representation be acted upon, or the party asserting estoppel reasonably believes that he so intends; (4) the party asserting estoppel is unaware of the true facts; (5) the party asserting estoppel reasonably or justifiably relies on the representation to his detriment. Egerer v. Woodland Realty, Inc., 556 F.3d 415, 425 (6th Cir. 2009), citing Sprague v. General Motors Corp., 133 F.3d 388, 403 (6th Cir. 1998).

  In this case, Mr. Collins has come forth with some facts in support of each of these elements. As to the first element, it appears undisputed that Mr. Pusateri was told that the property seized would be returned if a court so ordered. In apparent reliance on this statement, Mr. Pusateri made both oral and written motions to the state court requesting the return of Mr. Collins' property. As to the second element, there is a genuine issue of material fact as to whether at the time these statements were made, Defendants were aware of the true facts – specifically, that Mr. Collins' property would not and could not be returned to him even with a court order, because they had already disposed of his property or intended to do so. As to the third element, a reasonable trier of fact could conclude that the

Defendants intended Mr. Pusateri to rely on their representations and seek return of the property through a state court order rather than by filing a §1983 action. As to the fourth element, there is evidence that Mr. Collins was unaware that the property would be sold during the time the motions for return of the property were pending before the state court. Finally, as to the fifth element, a trier of fact could find that Mr. Collins' reliance on the Defendants' representations regarding the status of his property was reasonable, and that he was prejudiced by this reliance in that he did not file this action within two years of the date of the seizure, even though he could have done so had he not believed that he could simply get a court order and recover his property.

Given the existence of factual issues as to the application of equitable estoppel, summary judgment on statute of limitations grounds is not appropriate. Of course, as the record is more fully developed, the Defendants are be free to re-argue the issue if they believe the facts preclude the application of equitable estoppel - just as Mr. Collins is free to develop and present additional facts on the issue of what a reasonable person would have understood about the existence of an actual injury at the time his property was seized. This is simply not the correct time to resolve these issues, however, so Defendants' motion must be denied.

IV.

For all of the reasons set forth above, the Defendants' Motion for Summary Judgment, Doc. No. 12, is denied.

/s/ Terence P. Kemp
United States Magistrate Judge